# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

ELIZABETH A. CONNER                                    PLAINTIFF

V.                      NO. 4:16CV00656-JTR

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration                             DEFENDANT

## ORDER

### I. Introduction:

Plaintiff, Elizabeth A. Conner, applied for disability benefits on March 6, 2013, alleging her disability began on October 1, 2012. (Tr. at 12). Her claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 24). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Conner has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

### II. The Commissioner's Decision:

The ALJ found that Conner had not engaged in substantial gainful activity

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

since the alleged onset date of October 1, 2012. (Tr. at 14). At Step Two of the five-step analysis, the ALJ found that Conner has the following severe impairments: degenerative disc disease with lumbosacral radiculopathy, status post spinal fracture, major depressive disorder, and alcohol dependence in early full remission. *Id.*

After finding that Conner's impairments did not meet or equal a listed impairment (Tr. at 15), the ALJ determined that Conner had the residual functional capacity ("RFC") to perform the full range of sedentary work, except that: (1) she could only occasionally climb, balance, crawl, kneel, stoop, and crouch; (2) she could frequently finger and handle bilaterally; and (3) she is limited to simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed and supervision is simple, direct, and concrete. (Tr. at 17). Next, the ALJ found that Conner was not capable of performing her past relevant work. (Tr. at 22). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Conner's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform at the sedentary level with the added limitations, specifically, small product assembler, document preparer, and escort vehicle driver. (Tr. at 24). Based on that Step Five determination, the ALJ held that Conner was not disabled. *Id.*

## III. <u>Discussion:</u>

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B. Conner's Arguments on Appeal

Conner argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ erred in his RFC determination and improperly disregarded medical opinions.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). Conner limited her RFC argument to limitations from pain related to back and neck impairments. The Court likewise limits its discussion.

Conner explained that her back problems arose when she fractured her spine as a teenager. (Tr. at 18). An MRI from October 2012 revealed mild effacement of the thecal sac and mild right-sided foraminal narrowing at L4-L5, with normal spinal cord size and signal. (Tr. at 480-481). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

On February 26, 2013, Conner reported back pain to Dr. William Malabre, M.D., but she demonstrated a normal gait with no joint swelling or spasm of the lumbosacral spine. (Tr. at 455). She had normal movements of all extremities. *Id*. Musculoskeletal exams continued to be grossly normal.

On June 11, 2013, Conner complained of back pain but indicated that medication helped minimize the pain. (Tr. at 450). In July and August 2013, Conner showed pain with flexion and extension of the back but normal gait and range of motion. (Tr. at 535, 540). While Conner indicated back pain in September 2013, she had no palpable cervical trigger points, no atrophy, tenderness, or asymmetry in the thoracic spine, and no pain in the lumbar spine upon percussion or palpation. (Tr. at 529). She did have a straight-leg raise on the left on September 13, 2013. (Tr. at 530).

On October 8, 2013, Conner said that with epidural steroid injections, her lower back and hip pain had improved. (Tr. at 518). She was able to perform activities of daily living with the aid of pain medication. *Id*. Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Again, in November 2013, Conner said she could do activities of daily living with the aid of pain medication, and she said she experienced a 50% improvement

5

in back and leg pain since her last injection. (Tr. at 507). The pain was manageable, and she reported improvement in tolerance of physical activity. *Id*. Inspection of the cervical, lumbar, and thoracic spine was grossly normal, with some stiffness but no evidence of atrophy or asymmetry. (Tr. at 509). Musculoskeletal exams were again normal on November 18, November 26, and December 2 in 2013: Conner demonstrated normal gait, station, and range of motion. (Tr. at 540-543, 567). On December 4, 2013, Conner attested to 50% improvement since her last injection. (Tr. at 501).

On June 4, 2014, Conner said her last injection had improved her pain by 80%. (Tr. at 725). She said she was sleeping better at night. *Id*. Physical therapy had helped and she was doing exercises at home. *Id*. On August 11, 2014, Conner's pain was "not nearly as bad as it used to be." (Tr. at 728). She could perform activities of daily living while on pain medication and felt stable on her current medication regimen. *Id*. In November 2014, Dr. Ira Chatman, M.D., said that Conner had not responded well to various treatments, but also in November, she said that medication was partially effective and pain got better by sitting and resting. (Tr. at 736). This comment supports the ALJ's RFC for sedentary work. At the time, Conner also reported that a bursa injection improved her pain by 95% and she was stable on her current medication regimen. (Tr. at 745).

6

Dr. Ronald Bruton, MD., filled out an RFC medical source statement on March 28, 2014, which contradicts the mild findings and positive response to treatment presented above. (Tr. at 679). He said Conner would need to shift positions at will, would need one to two unscheduled breaks per day, and would miss more than four days of work per month. (Tr. at 678, 679). The ALJ rightly gave Dr. Bruton's opinion little weight, because his opinion is inconsistent with the evidence in the record as a whole, which revealed mild objective findings, mostly normal clinical exams, and positive response to treatment. An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

Dr. Malabre filled out a checkbox medical source statement on June 11, 2013. (Tr. at 364). Dr. Malabre said Conner could sit no more than four hours a day and would miss more than two days of work per month. *Id*. First, a conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Second, Dr. Malabre's opinion issued before Conner consistently reported improvement with medication and steroidal injections. The ALJ properly afforded

little weight to Dr. Malabre's opinion.

Dr. Ted Honghiran, M.D., completed a medical source statement on June 15, 2015, which is more reflective of Conner's condition and aligned with the sedentary RFC. (Tr. at 829-831). He found that Conner could walk normally, undress without difficulty, and could get on to the examining table without a problem. (Tr. at 829). He found negative straight-leg raises and no muscle atrophy or spasm. (Tr. at 830). Conner had normal reflex and sensation. *Id.* Dr. Honghiran diagnosed lower back pain, and said that she would need to find a job with "lighter work." *Id*. The medical evidence supported this medical opinion and provided for the sedentary RFC.

The ALJ also considered Conner's ability to perform activities of daily living. She could prepare simple meals, do laundry, go outside once a day, shop in stores, and spend time with others. (Tr. at 263-266). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

The RFC incorporated all of Conner's limitations, which were borne out by conservative treatment, positive response to treatment, mostly normal musculoskeletal exams, and the ability to engage in activities of daily living.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ gave proper weigh to the medical opinions and the RFC determination fully incorporated all of Conner's limitations.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Conner's Complaint is DISMISSED, with prejudice.

DATED this 22nd day of November, 2017.

_____
UNITED STATES MAGISTRATE JUDGE